## HILLIARD v. BEATTIE.

An assignment of a pending suit as security for a debt, with authority to settle the suit and apply the proceeds on the debt, is irrevocable by the assignor, and survives to the administrators of the assignee.

A plaintiff in a suit, who has, under seal and for a valuable consideration, empowered another to settle it, is estopped from disputing the power after a settlement made in good faith.

If such a settlement is made by the administrators of the person empowered, it is not invalidated by his parol agreement for a modification of the power, of which they have no notice or knowledge.

TRESPASS, for assault and battery, being the same case reported in 59 N. H. 462. The defendant moved to enter the action "Neither party." Facts found by the court.

April 8, 1882, the plaintiff assigned the suit to Jacob Benton by a sealed writing, which specifies that it is made as part security for certain indebtedness, and authorizes and empowers Benton to settle the suit for such sum as he shall think reasonable, and apply the proceeds in payment of the indebtedness. November 25, 1889, the plaintiff and Benton made and delivered to each other a sealed paper in duplicate, in which Benton agrees to accept $2,400 from the plaintiff in full settlement of the plaintiff's indebtedness if paid on or before May 25, 1890,. and on such payment to surrender the above mentioned assignment ; and the plaintiff agrees, if he shall not pay that sum by the date named, that Benton shall have full authority to settle the suit without any notice whatever, and according to his own discretion. In July, 1892, involuntary proceedings in insolvency were begun against the plaintiff, and are still pending. The plaintiff has not been discharged. The plaintiff proved, subject to exception, that, on the day the proceedings in insolvency were begun, Benton agreed with him not to press him in regard to his. indebtedness if he would make an effort to raise money to try this case within a reasonable time ; and if he should not be able

to raise money for trying the case, Benton would help him raise it, and try his case after he should receive his discharge in insolvency. In September, 1892, Benton died. In December or January following, his administrators had an interview with the plaintiff in reference to his indebtedness to the estate, in which he requested them to. prove in the insolvency proceedings certain notes given by him to Benton, and to await the termination of the proceedings before enforcing the assignment. January 11, 1893, they wrote him declining his request, and expressing their purpose to settle this case, in order to close up the Benton estate more speedily. January 21, 1893, the plaintiff wrote them a letter, in which he expressed his disappointment at their decision, asked them not to settle the case without giving him all the chance they could, with justice to their estate, to redeem his obligation, and requested them to write him how long they would wait for him. January 28, 1893, no part of the indebtedness of $2,400 having been paid, the administrators, acting in good faith, and having no knowledge of the agreement made by Benton on the day of the beginning of insolvency proceedings against the plaintiff, made a settlement of this case with the defendant for $1,250, and made and delivered to him a sealed paper, written on the back of the plaintiff's assignment, wherein they assigned to the defendant all the interest Benton had in the assignment and in the suit, guaranteed that they had a right to assign it, agreed to indemnify him against all loss, cost, damage, or expense thereafter occasioned to him by the plaintiff by reason of the suit, and agreed that the suit should be entered "Neither party" at the next term of court. In May, 1893, the plaintiff, being dissatisfied with the settlement, tendered to the administrators the amount received by them from the defendant with interest from the time they received it, and also tendered the same sum to the defendant, but both tenders were refused. Before settling the suit, the administrators waited a reasonable time after Benton's death for the plaintiff to pay his indebtedness; but they did not wait a reasonable time after January 21, if they were bound to wait further on account of his letter of that date.

*Henry Heywood*, *Everett Fletcher*, and *Bingham, Mitchell & Batchellor*, for the plaintiff.

*Drew, Jordan & Buckley, Bingham & Bingham*, and *Burleigh & Adams*, for the defendant.

BLODGETT, J. It is unnecessary to determine whether the assignment of April 8, 1882, was valid or otherwise as an assignment. It is sufficient for the present purpose that for a valuable consideration it authorized and empowered the assignee to settle this suit " for such sum as he shall think reasonable," and apply

the proceeds in payment of the assignor's indebtedness to him; and the agreement of November 25, 1889, also expressly stipulates that unless the assignor shall pay a given sum of money to the assignee on or before a certain day, the latter shall have full authority to settle the suit "without any notice and according to his own discretion." The effect was not to constitute a mere personal trust in the assignee, for while both instruments empowered him to settle the suit at his pleasure, each of them gave him a power coupled with an equitable interest in at least in its subject-matter. "When power is given to a person, who derives under the instrument creating the power, or otherwise, a present or future interest in the subject-matter over which the power is to be exercised, it is then a power coupled with an interest" (*Mansfield* v. *Mansfield*, 6 Conn. 559—16 Am. Dec. 76), and is irrevocable by the grantor, and survives to the representatives of the deceased grantee. See, generally, *Bergen* v. *Bennett*, 1 Cai. Cas. 1—2 Am. Dec. 281, and *note*, 291; *Hunt* v. *Rousmaniere*, 2 Mason 249; *Dartmouth College* v. *Woodward*, 4 Wheat. 700; *Hutchins* v. *Hebbard*, 34 N. Y. 24; *Knapp* v. *Alvord*, 10 Paige Ch. 205—40 Am. Dec. 241; *Raymond* v. *Squire*, 11 Johns. 47; *Goodwin* v. *Bowden*, 54 Me. 424; *Frink* v. *Roe*, 70 Cal. 296; 39 Am. Dec., *note*, 82, 83; *Gutman* v. *Buckler*. 69 Md. 7; *Robinson* v. *Allison*, 74 Ala. 254; *Loring* v. *Marsh*, 2 Clif. 311; *Davis* v. *Lane*, 10 N. H. 156, 160; *Jordan* v. *Gillen*, 44 N. H. 424, 427; 18 Am. & Eng. Enc. Law 888–891, and authorities cited.

But if the rights of the grantee in the suit did not pass to his administrators, and even if the grantee himself had none, it is quite immaterial. There is another ground that forecloses the plaintiff. He is without standing, equitable or legal. Having voluntarily, under his own hand and seal and for a valuable consideration, clothed Benton with the unfettered power to settle the suit, and Benton's administrators, trusting to such apparent authority as well as to the distinct recognition of their right to exercise it contained in the plaintiff's letter of January 21, 1893, having in good faith effected its settlement, and without knowledge of the parol agreement of their intestate proved by the plaintiff at the hearing, he cannot now be heard to impeach the settlement. He is estopped, alike at law and in equity, both by his acts of omission and commission. In effect, he stands the same as to the settlement that he would if he had given the administrators the most formal authority to make it as his agents.

*Motion granted.*

Smith and Carpenter, JJ., did not sit: the others concurred.