CATHARINE LEONARD, Administratrix, etc., Respondent, *v.* MARTIN COLLINS, Appellant.

In an action against a master for an injury to a servant while in the master's employment, alleged to have been caused by the negligence of the latter, the test of liability is not whether the master omitted to do something which he could have done, and which would have prevented the injury, but whether he did anything which, under the circumstances, in the exercise of ordinary care and prudence he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken.

Accordingly *held*, where in such an action it appeared that the servant was killed by the fall of an overhanging portion of bank of earth, which was being excavated under the direction of the master, that it was

error to charge the jury to the effect that if defendant could have done anything which would have prevented the accident, his omission so to do was negligence.

The portion of the bank which fell was cut away by other men in defendant's employ. Plaintiff's evidence tended to show that just prior to its fall, defendant stated that he would not cut it away for half an hour, and that relying on this the deceased, and other workmen continued to work under it. The court submitted it to the jury to find whether this promise was made, remarking that it was a very important feature of the case. Defendant's counsel thereafter requested the court to charge that if notwithstanding such promise was made, the deceased saw the men at work cutting down the bank, plaintiff could not recover on the theory that the deceased had no warning that the work was going on. The court refused so to charge. *Held*, error.

(Submitted May 28, 1877; decided June 5, 1877.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for the death of Hugh Leonard, plaintiff's intestate, alleged to have been caused by defendant's negligence.

The deceased was in the employ of defendant, and with other workmen was engaged in excavating a bank of earth; the top of the bank was frozen; the earth underneath was first partially removed, leaving sections at intervals to support the overhanging bank; these were then removed and a portion of the projection fell, a portion, however, remained. Workmen were sent to the top of the bank to cut it away, while the deceased and others were set to work loading carts with the loose earth. Plaintiff gave evidence to the effect that defendant, who was at the top of the bank, informed those who were working below that the bank would not be cut away for half an hour. The deceased and others thereupon continued their work, and in a few minutes thereafter the projecting portion of the bank fell, crushing and killing the deceased.

The questions determined arise upon the charge of the court, and upon a refusal to charge, which are set forth in the opinion.

*Frank E. Blackwell*, for the appellant. The deceased was guilty of contributory negligence in not attempting to escape after the warning given by defendant. (*Gonzales* v. *N. Y. & H. R. R. Co.*, 38 N. Y., 440; *Wilcox* v. *R. W. & O. R. R. Co.*, 39 id., 358; *Warner* v. *N. Y. C. R. R. Co.*, 44 id., 465, 470; *Wright* v. *N. Y. C. R. R. Co.*, 25 id., 566.) It must appear affirmatively that the deceased was free from negligence to entitle plaintiff to recover. (*Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y., 248; *Ernst* v. *H. R. R. R. Co.*, 24 How. Pr., 97, 103; *Wilds* v. *H. R. R. R. Co.*, 24 N. Y., 430; *Delafield* v. *Un. F. Co.*, 10 Bosw., 216, 218, 219.) The court erred in refusing to charge that no duty rested upon defendant except to use his best knowledge, judgment and experience. (S. & R. on Neg., 14, § 12; *Sheldon* v. *H. R. R. R. Co.*, 14 N. Y., 224.)

*Thomas E. Pearsall*, for the respondent. A master is responsible to his employees for injuries arising from his personal neglect. (*Connolly* v. *Poillon*, 41 Barb., 366; *Wright* v. *N. Y. C. R. R.*, 25 N. Y., 562; *Brickner* v. *N. Y. C. R. R.*, 2 Lans., 506; *Anderson* v. *N. J. Steamboat Co.*, 7 Robb., 611; Wharton Law of Neg., §§ 205, 207, 208, 209, 210; S. & R. on Neg., §§ 93, 89, 82; *Brydon* v. *Stewart*, 2 Macq. [S. A.], p. 30; *Fifield* v. *N. R. R. Co.*, 42 N. H., 225; *Ormond* v. *Holland*, 96 Eng. Com. L. R., p. 100; *Ashworth* v. *Stanwix*, 3 El. & El., 701; *Peterson* v. *Wallace* [vol. 1], Macq. Rep., p. 748; *Marshall* v. *Stewart* [vol. 33], Eng. Law and Eq. Rep., p. 1; *Mellors* v. *Shaw*, 1 Best & S., 437; *Keenan* v. *Western R. R.*, 8 N. Y., 175; Wharton Law Neg., §§ 207, 209, 210.) The deceased had a right to rely upon the promise of the defendant that he would not cut the bank from above for half an hour, and that he would give timely warning of any danger, and that the bank would not fall for half an hour. (*Bradley* v. *N. Y. C. R. R.*, 62 N. Y., 99; *Connolly* v. *Poillon, supra; Keegan* v. *W. R. R., supra.*) It was the duty of the defendant to take reasonable care, so far as his acts were concerned, to prevent the injury to the

deceased.   (*Gibson, admr.,* v. *Erie R. R.,* 63 N. Y., p. 449;
*Patterson* v. *Pittsburgh & Conn. R. R. Co.,* 76 Penn. Rep.,
p. 389.)   The court properly refused to charge "that it is
for the plaintiff to prove a violation of law." (*Caldwell* v.
*N. Y. Steamboat Co.;* 47 N. Y., 282; *Sperry* v. *Miller,* 16
id., 407; *Bagley* v. *Smith,* 10 id., 489; *Carpenter* v. *Stilwell,*
11 id., 61; *Keller* v. *N. Y. C. R. R.,* 2 Abb. Ct. App. Dec.,
480; *Hodges* v. *Cooper,* 43 N. Y., 216; *Wright* v. *Paige,* 36
Barb., 438; affirmed, 3 Keys, 581; *Newman* v. *Cordell,* 43
Barb., 448; citing, 3 Duer, 594; 1 Comst., 79; 13 N. Y.,
332; 31 Barb., 171; 5 N. Y., 442; 30 Barb., 246; 6 N. Y.,
233; 11 Barb., 520, 524; 24 How. 172.)   The question of con-
tributory negligence on the part of the deceased was one for the
jury.   (*Hackford* v. *N. Y. C. R. R.,* 53 N. Y., 654; *Spooner* v.
*Brooklyn City R. R.,* 54 id., 230; *Gillespie* v. *City of New-
burgh,* id., 468; *Moody* v. *Osgood,* id., 493; *Colegrove* v. *N.
Y. H. R. R.,* 20 id., 492; *Sheehan* v. *Edson,* A. L. J. [vol. 2,
No. 22, p. 352], Court of Appeals; *Sheehy* v. *Burger,* 62 N.
Y. R., p. 558; *Weber* v. *N. Y. C. R. R.,* 58 N. Y., 455.)

*Per Curiam.*   The excavation of the embankment was
being carried on under the personal supervision and direction
of the defendant, and he was bound to exercise reasonable
care and prudence in the management of the business, and if
the cutting away and loosening of the earth at the top of the
embankment, while the plaintiff's intestate was engaged in
loading the cart below, was an imprudent and negligent act
which caused his death, the plaintiff is entitled to recover.
The master is liable for an injury to his servant arising from
his personal fault or neglect.   (*Keegan* v. *Western R. R.
Corporation,* 8 N. Y., 175; *Wright* v. *N. Y. Cent'l R. R. Co.,*
25 N. Y., 562; *Ashworth* v. *Stanwix,* 3 El. & El., 702;
*Connolly* v. *Poillon,* 41 Barb., 366.)

In determining the question of the master's negligence in an
action by the servant for an injury alleged to have been sus-
tained by him while in the master's employment, from the
negligence of the latter, the jury are to inquire whether, under

the circumstances proved, the master did anything which, in the exercise of reasonable and ordinary care and prudence, he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken, and as they shall find upon this question (if therewas no negligence on the part of the servant) determine their verdict.

The court in this case charged the jury that it is the duty of an employer to take all reasonable care of his workmen, and, therefore, if they should find "that the defendant was guilty of any negligence, omitted to do anything by which the life of the plaintiff's intestate could have been preserved, he would be liable;" also, that it was for the jury to say, "whether, all things considered, there was anything that the defendant could have devised· to have prevented the accident; whether there was anything in his experience and familiarity with that kind of business which would have suggested to him there was any special danger against which he ought to take special care.". The defendant, at the conclusion of the charge, excepted to the instruction to the jury, "that if the defendant could have done anything to preserve the life of the deceased, that he should have done it," and the judge qualified it by saying, "perhaps preserve the life," is susceptible of criticism. I meant to have said, "anything that could have prevented the accident," and the defendant excepted to the charge as qualified.

We are of opinion that the judge erred in this instruction. That the defendant could have done something which would have prevented the accident cannot be doubted. But this was not the test of his liability. The question was, was he negligent? did he exercise ordinary care and prudence in conducting the excavation, in view of the position of the deceased, the probable consequences which would result from the falling of the overhanging earth while the intestate was below? The error in the charge was calculated to mislead the jury upon a material point, and was not, we think, cured by the other instructions given. (See *Chapman* v. *Erie R'way Co.*, 55 N. Y., 579.)

There is another exception which was, we think, well taken. The plaintiff claimed that the defendant said that he would not cut the bank away for half an hour, and that, relying upon this promise, the intestate and other workmen commenced working under the bank, and that in violation of this promise, the defendant commenced cutting away the roots of the trees and supports of the bank immediately, and in a few moments it fell. There was some evidence to sustain this claim, and the judge submitted it to the jury to find whether this promise was made, remarking that it was a very important feature of the case, and that if the defendant said he would not commence cutting away the bank for half an hour, " it might go very far in the opinion of the jury to establish his want of care and prudence." The defendant's counsel subsequently requested the judge to charge the jury, that if they believed that " the defendant said he was not going to begin work at once, or anything that could be so construed, and notwithstanding that statement by Collins, the deceased saw the two men working upon the bank and cutting it down, the plaintiff cannot recover upon the theory that the deceased had no warning that the work was going on." The judge refused this request, and exception was taken.

We think this request should have been granted. The failure of the defendant to warn the workmen that the bank was being cut away, was one of the material facts relied upon by the plaintiff to show the defendant's negligence, and the absence of negligence on the part of the deceased. But the jury might have found from the evidence that the deceased saw the workmen cutting away the bank. If he had looked up he could probably have seen them, and if he saw the work progressing, the omission of the defendant to give the warning, or his failure to keep his promise, would not be a ground of recovery.

The judgment should be reversed, and new trial ordered.

All concur, except Rapallo, J., absent.

Judgment reversed.