(17 Misc. Rep. 601)

McKAY v. BUFFALO BILL'S WILD WEST CO.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

MASTER AND SERVANT—FELLOW SERVANTS.

Plaintiff, whose particular duty in defendant's employ was to maintain order and discipline among defendant's employés, was a fellow servant of another employé whose position was that of watchman at the gates of defendant's show grounds.

Appeal from Eighth district court.

Action by Barney McKay against the Buffalo Bill's Wild West Company to recover damages for the destruction of personal property by fire through the alleged negligence of defendant, by whom plaintiff was employed. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before McADAM and BISCHOFF, JJ.

S. L. Samuels, for appellant.

James E. Brown, for respondent.

BISCHOFF, J. The plaintiff complained of the loss of his personal effects by a fire which occurred about noon of November 30, 1895, in a car forming a part of the equipment of the defendant company's itinerant show. The car was at the time stationary at the defendant's grounds at Philadelphia, Pa., and was used for the

lodging of some of the defendant's employés,—the plaintiff, whose particular duty it was to maintain order and discipline among the occupants, and a number of men engaged to take part in the show. The interior of the car was arranged with berths on each side, leaving an aisle extending from end to end; and, to insure the comfort of the occupants during occasional inclement weather, the defendant had provided an oil stove, which was about three feet in height, and supplied with iron props attached to and under the base in quadrangular position.    When in use, the stove stood in the center of the aisle.    At the time of the fire, the stove had been in use for a month or more, and was then in use.    The fire was caused by contact with the interior of the car of the ignited oil which had escaped by the overturning of the stove.    The litigants, both conceding that its presence was known to all the occupants, and that the stove was plainly visible, varied in their explanations as to how it came to be overturned; the plaintiff's version being that it was done by one McDermott, then also in the defendant's employ, as a watchman at the gates of the show grounds, in walking backward up to and against the stove, while conversing with others in the car; the defendant's, that the stove was upset in a scuffle between McDermott and some others of the employés and occupants.    It nowise appeared upon the trial that the stove was in anything but good order, that the place of its use was not ordinarily safe and free from the risk of fire, or that the defendant had been remiss in the selection of any of its employés.    That the defendant did provide a means of enforcing order and discipline among its employés was apparent from the fact of the plaintiff's employment for such purpose.    From the record, therefore, we are forced to conclude that the defendant's negligence was predicated of the fact alone that it had omitted to securely fasten the stove to the floor of the car, such omission having been repeatedly alluded to by the plaintiff's counsel.

We do not approve the conclusion of the court below.    The plaintiff and the person or persons who were directly responsible for the accident were engaged in the same general service, worked under the same master or control, and severally derived their authority and compensation from the same source.    True, the plaintiff's services differed in kind from McDermott's, and both differed from the services of the other employés.    But the plaintiff, McDermott, and each of such other employés co-operated to the same end,—the conduct and maintenance of the defendant's business in and about which they were particularly employed.    They were therefore fellow servants, each having assumed the risk of loss from the others' careless conduct, as an incident of the employment, and no liability whatever attached to the defendant because of such conduct.    Cooley, Torts (2d Ed.) 639; Thomp. Neg. 1026; 7 Am. & Eng. Enc. Law, 834.

That the fire was wholly caused by the carelessness of one or more of the plaintiff's fellow servants was conclusive from the facts in evidence, whether the plaintiff's or the defendant's version of the happening of the accident be accepted as the correct one.    It may be that, if the stove had been fastened to the floor of the car, the actual violence of McDermott's impact therewith would not have been suffi-

cient to overturn it; but the fact remains that the accident did result from such impact, under circumstances which admitted of no inference that it was owing to anything but the disregard of ordinary care upon the part of one or more of the defendant's servants and the plaintiff's fellow servants. The master is held to the same degree of care to which his servants are held,—reasonable care, that degree of care which an ordinarily prudent person may be expected to exercise under the like circumstances. The defendant was not, therefore, required to exercise extraordinary caution, and to resort to unusual means to avoid an accident. It had the right to assume that each of its servants would be ordinarily vigilant to avoid inflicting damage upon himself or upon his fellow servants. Hence negligence upon the defendant's part was not predicable of the fact merely that the accident might not have happened as it did if something that was omitted had been done. The test of negligence is not that the person charged therewith might have avoided the accident by a particular measure to that end, but that he either did what an ordinarily prudent person would not have done, or did not do what an ordinarily prudent person would have done, under the like circumstances. Leonard v. Collins, 70 N. Y. 90. That the defendant was censurable in such a regard did not appear from the evidence in the record. Our conclusion to reverse the judgment for insufficiency of the evidence makes the discussion of other grounds urged for the appellant unnecessary.

The judgment should be reversed, and a new trial had, with costs to the appellant to abide the event.